UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------

VANESSA COHN, o/b/o R.Y.,

                              Plaintiff,

       v.                                         10-CV-214

MICHAEL J. ASTRUE,
**Commissioner of Social Security**
**Administration**

                              Defendants.

-----------------------------------

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

Plaintiff Vanessa Cohn brought this action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), appealing a final decision of the Social Security Administration denying her son's application for Social Security benefits. Presently before the Court is Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. Rule 12(c).

**I.**       **STANDARD OF REVIEW**

The Court's review of the Commissioner's determination is limited to two inquiries. First, the Court must determine whether the Commissioner applied the correct legal standard. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Second, the Court reviews whether the Commissioner's findings are supported by substantial evidence within the administrative record. Id. at 773. The Commissioner's finding will be deemed conclusive if supported by substantial evidence. 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). In the

context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938). Where the record supports disparate findings and provides adequate support for both the plaintiff's and the Commissioner's positions, a reviewing court must accept the Administrative Law Judge's factual determinations. Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997).

**II.      DISCUSSION**

Plaintiff seeks judicial review of the final decision of the Social Security Administration denying the claim that she submitted on behalf of her son R.Y., for Social Security benefits. Plaintiff alleges that R.Y. has been disabled since 2006 because of attention deficit hyperactivity disorder (ADHD) and obsessive compulsive disorder (OCD). On appeal, Plaintiff argues that R.Y.'s severe impairment of ADHD equals a listed impairment and that the ALJ improperly evaluated school reports, improperly discredited testimony from Plaintiff and R.Y.'s aunt, and he failed to consider R.Y.'s symptoms of OCD in his assessment.

A child from a low-income family may receive Social Security benefits if the child has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382(a)(1) and § 1382c(a)(3)(C)(i). To determine eligibility for benefits, the Administrative Law Judge (ALJ) applies a three-step analysis. Pollard v. Halter, 377 F.3d 183, 189 (2d Cir. 2004); 20 C.F.R. § 416.924(a). First, the ALJ determines whether the child is engaged in substantial gainful activity.

Id. at § 416.924(b).  Second, the ALJ decides whether the child has a medically determinable severe impairment or combination of impairments that is severe.  Id. at § 416.924(c).  If the child has a severe impairment, the ALJ proceeds to step three and evaluates whether the impairment medically equals or functionally equals a disability in the regulatory listing of impairments (Listings).  20 C.F.R. Pt. 404, Subpt. P, App. 1; 20 C.F.R. § 416.924(d).  Here, the ALJ determined that R.Y. did not engage in substantial work activity and that he has a severe impairment of ADHD.  However,  the ALJ found that the impairment did not medically or functionally equal the requirements of the ADHD Listing at § 112.11.  As a result, the ALJ concluded that R.Y. was not disabled.

There is substantial evidence in the record to support the ALJ's conclusion that R.Y.'s impairments did not meet or equal the Listing at § 112.11.  To meet the requirements of Listing § 112.11 there must be: (1) medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity; and (2) a marked impairment in at least two of the following: cognitive or communicative function, social functioning, personal functioning or maintaining concentration, persistence and pace.  Id.  In August 2006, pediatrician Dr. Lawrence Horowitz first examined R.Y. and prescribed 5 mg of Adderall for "[p]robable ADHD."  The physical examination was "[c]ompletely unremarkable."  By October 2006, Dr. Horowitz described R.Y.'s symptoms as "improved" with respect to hyperactivity, attention span, distractibility, ability to finish tasks, impulse control, frustration tolerance, accepting limits, and peer relations.  Despite difficulty with medication compliance, Dr. Horowitz noted an improvement in symptoms by March 2007 and stated that "[t]hings [we]re going well in school and at home."  By April 2007, R.Y. was "doing very nicely," with "no real problems," and his

schoolwork was "excellent."  In May 2007, "[t]hings [were] going very nicely," with "[n]o problems", "[n]o difficulties," and R.Y. was "happy at school."  In December 2007, R.Y.'s ADHD was well controlled and, upon examination, he was active, alert, and cooperative.  In January 2008, R.Y. was "doing well," with "no real problems or issues."  In February 2008, R.Y.'s ADHD symptoms worsened and his dose of Adderall was increased.  Dr. Horowitz also referred R.Y. for a psychological consultation, but Plaintiff did not follow through at that time.  In June 2008, R.Y.'s symptoms were improved and, in December 2008, Plaintiff told Dr. Horowitz that she had received a "good report" on R.Y.'s classroom behavior.  In February 2009, Psychiatrist  Dr. Jeff Daley evaluated R.Y. and reported that he was connecting with his teachers and "doing better" in school, he had no "physical or cognitive limitations," no barriers to communication, recent and remote memory were intact, and he had no evidence of tics.  Dr. Daley noted R.Y.'s fears of choking and contamination but ruled out anxiety disorder and OCD as a diagnoses.  In May 2009, Dr. Daley noted that R.Y. was well-groomed, his speech was normal, memory and thought processes were intact, he was oriented to person, place, and time, was capable of age appropriate abstract thinking and he had no hallucinations, delusions, suicidality, or homicidality

  In January 2007, psychologist Dr. Seth Rigberg performed a consultative examination and noted that R.Y. attended Head Start at age four and kindergarten at age five without special services, but that R.Y. received extra help in reading in first grade and had recently been evaluated for special education.  Plaintiff reported that: R.Y. received counseling for about three months in 2006, but she discontinued it because she felt that R.Y. was improving; R.Y. began taking Adderall in October 2005, but had stopped the medication and restarted in 2006; R.Y.'s

4

behavior had "ups and downs," but his sleep and appetite were normal; and that R.Y. had never received inpatient treatment. Upon examination, R.Y. was cooperative and had age-appropriate social skills. His motor behavior was restless, but his eye contact was appropriately focused. R.Y.'s speech was fluent and clear with good intelligibility, his expressive and receptive language skills were age-appropriate, and his thought processes were coherent and goal directed. His attention and concentration were intact and age-appropriate, and his recent and remote memory were also intact and age-appropriate. With respect to R.Y.'s "mode of living," Plaintiff reported that R.Y. only picked up after himself "once in a while," but was able to dress, bathe, and groom himself. R.Y. had friends, he liked to watch TV, listen to music, play with his siblings and play with toys, video games and the computer. Dr. Rigberg noted that R.Y. was a "slow learner" and did not always ask questions or request assistance in an age-appropriate manner, but also opined that R.Y. was able to attend to, follow, and understand age-appropriate directions and complete age-appropriate tasks when he wanted to. Dr. Rigberg noted that R.Y. had some trouble maintaining social behavior in structured situations, but stated that R.Y. seemed to do better in unstructured situations and was able to interact with peers and usually with adults. R.Y. also responded appropriately to changes in his environment, was aware of danger, and took needed precautions.

In March 2007, state agency psychiatrist Dr. Abdul Hameed completed a Childhood Disability Evaluation Form after reviewing R.Y.'s medical and school records. Dr. Hameed assessed that R.Y. had marked limitations in attending and completing tasks, but less than marked limitations in all other domains and no limitation in moving about and manipulating objects. Dr. Hameed opined that, although R.Y.'s condition was severe, it did not meet,

medically equal, or functionally equal an impairment contained in the Commissioner's listing of impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ properly considered the school records in determining that R.Y. was not disabled. Information from school teachers cannot establish the existence of a medically determinable impairment. Social Security Ruling 06-03p, 2006 WL 2329939, at *4 (S.S.A). Instead, there must be evidence from an acceptable medical source for this purpose. Id. Information from teachers, however, may be based on special knowledge of the individual and may provide insight into the severity of the impairment and how it affects the individual's ability to function. Id. Plaintiff argues that the ALJ disregarded a 2006-2007 academic year teacher questionnaire that was completed by Linda Zilka a second grade teacher. Ms Zilka noted that R.Y. had pervasive "serious" to "very serious problems" with regard to skills used in acquiring and using information; attending and completing tasks; interacting and relating with others and caring for oneself. The ALJ, however, was not required to give further weight to this report because Ms. Zilka had known R.Y. for only one month at the time of her evaluation and her assessment contrasted with the other substantial evidence of record. See SSR 06-03p (providing that factors in evaluating the opinion of teachers are the length of time that the source has known the child and the consistency of the opinion with other evidence). In January 2007, for example, standardized testing revealed that R.Y.'s cognitive ability was in the average range. He performed in the above average range on measures requiring processing speed, short-term memory, visual perception, and visual-motor coordination. He also performed within the average range on numerous measures of cognitive processing, including tasks that required attention and concentration as well as the ability to follow complex directions. Although R.Y.

had some difficulty with phonetic decoding and comprehension, his performance on measures of reading comprehension was in the low average range when compared with peers in the same grade.  R.Y. additionally performed within the average range on measures of written language and spelling.  The school psychologist, Lauren Simmons Lozer, noted that, at home, R.Y. enjoyed drawing, playing with cars, watching cartoons, and reading with his grandmother.  He played with children aged three to nine at home every day, including playing on a tire swing, with cars, coloring, and running around outside.  In March 2007, speech language pathologist Jeanne Milton completed an evaluation and found that R.Y. had a normal voice, articulation, and fluency of speech.  Testing results revealed a below-average score in the area of language content, however R.Y.'s core language score was average including both receptive and expressive language.  In March 2007, an occupational therapy evaluation was completed that revealed an above average score in visual-perceptual skills.  Occupational therapist Gwendolyn Sue Mucica also noted that in the area of gross motor skills R.Y. worked slowly and carefully with excellent problem-solving skills.

In 2008, New York State testing indicated that R.Y. was three points below the minimum standard for mathematics.  His English scores were below the target range in "Language for Literacy Response and Expression" but within the target range in "Language for Information and Understanding," and above the target range in "Language for Critical Analysis and Evaluation."  A March 2008 Metropolitan Achievement Test resulted in a "Total Reading" score indicating that third-grader R.Y. read at a grade equivalent of 2.3.  R.Y.'s mathematics score reflected a grade equivalent of 3.3.  R.Y.'s special education teacher Delia Tychostup noted that this might not be indicative of his true ability and she reported that his computation skills

were strong. R.Y.'s third grade teacher, Ms. McConnelee, reported that she was truly impressed with the progress he made over the 2007-2008 academic year. Although R.Y. had difficulty paying attention and sometimes became frustrated, his behavior improved "greatly" by the fourth quarter. In an April 2008 Individualized Education Program (IEP) third quarter assessment, R.Y. was described as taking medicine inconsistently to treat ADHD. R.Y.'s IEP assessment in April 2009, however, noted that he was a good math student and demonstrated an ability to use social skills with peers and adults. R.Y. "occasionally" exhibited behaviors consistent with ADHD, but also was learning to apply coping skills in situations that provoked anxiety, confusion or frustration, and responded well to encouragement and positive reinforcement.

      R.Y. was described as improving in all areas from November 2008 to April 2009. In February 2009, fourth grade teacher Annette Greco described a Metropolitan Achievement Test that indicated R.Y. was reading and writing at a grade level of 3.1, but his performance in mathematics was at the fourth grade level. In April 2009, special education teacher Delia Tychostup reported that R.Y. had difficulty in acquiring and using information but that it was not a very serious problem. Moreover, she stated that R.Y. had "improved in all areas" during the two academic years that she had worked with him. His social skills had improved, R.Y. had no problems in moving about and manipulating objects, he had no problem organizing his own things and only a "slight" problem in sustaining attention during play activities, refocusing, waiting to take turns, changing from one activity to another without being disruptive, completing work accurately without careless mistakes, working without distracting himself or others, and working at a reasonable pace. R.Y. had no problem with asking permission, using language appropriate to the situation, taking turns in a conversation, introducing and maintaining relevant

and appropriate topics, or interpreting facial expressions, body language, hints, and sarcasm. He had only a slight problem in playing cooperatively with other children, making and keeping friends, expressing anger appropriately, following rules, respecting or obeying adults in authority, relating experiences and telling stories, and using adequate vocabulary and grammar to express ideas in everyday conversation. Ms. Tychostup reported that no behavior modification strategies were needed. With respect to caring for himself, R.Y. had no problem in being patient when necessary, taking care of personal hygiene, caring for his physical needs, cooperating with needed medications, and using good judgment regarding personal safety. He had a "slight" problem in handling frustration, identifying and appropriately asserting emotional needs, responding to changes in mood, using coping skills, and knowing when to ask for help. Although he sometimes became frustrated, Ms. Tychostup reported that R.Y. did "well with coping strategies." Accordingly, R.Y.'s school records support the conclusion that his impairment is medically controlled and does not substantially interfere with his ability to perform in the areas that are considered in the disability analysis.

        The ALJ properly considered R.Y.'s symptoms of OCD because there was insufficient evidence in the record that suggested R.Y.'s symptoms of OCD substantially interfered with his ability to perform in the relevant areas under consideration. No medical or school reports articulated particular functional limitations due to R.Y.'s compulsive symptoms, much less suggested that his symptoms interfered seriously with his ability to function. In fact, in 2009, psychologist Dr. Daley ruled out OCD as a diagnosis in his assessment. The ALJ discussed R.Y.'s OCD in certain parts of his determination, however, he was not obligated to further consider the OCD symptoms throughout his entire assessment.

9

The ALJ properly exercised his discretion to evaluate the credibility of the testimony given by R.Y.'s aunt and Plaintiff. An ALJ has discretion to evaluate the credibility of a claimant and to make an independent judgment based on medical findings regarding the true extent of the claimant's symptoms. Mimms v. Heckler, 750 F.2d 180, 186 (2d Cir. 1984); Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). An ALJ's determination with respect to the credibility of witnesses is given great deference because the ALJ heard the testimony and observed the demeanor of the witnesses. Gernavage v. Shalala, 882 F. Supp. 1413, 1419 n. 6 (S.D.N.Y. 1995). The ALJ's decision to discount Plaintiff's statements of symptoms must be accepted by a reviewing court unless it is clearly erroneous. Centano v. Apfel, 73 F.Supp.2d 333, 338 (S.D.N.Y.1999). Lastly, Plaintiff must produce appropriate, probative evidence in support of any subjective statements of symptoms. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Here, the ALJ noted that R.Y. had some difficulty sustaining focus and attention, however, he found no evidence that R.Y.'s symptoms are of such frequency, intensity or duration as to render him incapable of engaging in age appropriate pursuits. As a result, the ALJ determined that the statements concerning the intensity, persistence, and limiting effects of R.Y.'s symptoms were not credible. The ALJ's findings are supported by substantial evidence of record including medical evidence from Doctors Horowitz, Daley, Rigberg, Hameed and other evidence including R.Y.'s school reports and standardized test scores.

### III.    CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's motion for judgment on the pleadings is GRANTED and the determination of the Commissioner is AFFIRMED.

**IT IS SO ORDERED.**

Dated:  March 29, 2012

_____
Thomas J. McAvoy
Senior, U.S. District Judge